IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARK FRANKLIN,                          :
                                        :
            Petitioner,                 :
                                        :
    v.                                  :        Civil Action No. 20-837-GBW
                                        :
ROBERT MAY, Warden, and                 :
ATTORNEY GENERAL OF THE                 :
STATE OF DELAWARE,                      :
                                        :
            Respondents.                :

---

Mark Franklin. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---

### **MEMORANDUM OPINION**[1]


July 28, 2023
Wilmington, Delaware

---

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court is Petitioner Mark D. Franklin's

("Petitioner") Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.

(D.I. 3)  The State filed an Answer in opposition, to which Petitioner filed a Reply.

(D.I. 9; D.I. 13)  For the reasons discussed, the Court will deny the Petition.

## I.   INTRODUCTION

In 2001, Delaware State Police Detective Wood was assigned to investigate

sexual crimes occurring at a daycare center in Magnolia, Delaware. (D.I. 10-16 at

3)  Detective Wood interviewed T.B., a six-year-old male, who advised that

Petitioner, then fourteen years old, lured him into a bathroom and forced him

(T.B.) to suck on his penis, and that Petitioner then sucked on T.B.'s penis.  (*Id.*)

Afterward, T.B. told another child at the daycare about the crime, and the child

confided in T.B. that Petitioner had done the same thing to him.  Detective Wood

interviewed M.S., a seven-year-old male, who stated that Petitioner had followed

him into the daycare's bathroom and had forced him (M.S.) to suck on his penis.

M.S. said that he did not tell anyone about the crime until another child at the

daycare disclosed similar events.  (*Id.*)

Petitioner was charged with three counts of second degree rape.  *See*

*Franklin v. State*, 855 A.2d 274, 275 (Del. 2004).  At that time, Petitioner was

fourteen years old.  The charges were transferred from Family Court to the

Superior Court pursuant 10 Del. C. § 1010,[2] 1011.  *See Franklin,* 855 A.2d at 275.

Petitioner filed a timely reverse amenability motion requesting a transfer back to

Family Court, which the Superior Court denied.  *See id.* at 276.  The case

proceeded to trial, and a Superior Court jury convicted him of all three counts of

second degree rape.  The Superior Court sentenced Petitioner to thirty years in

prison.  *See id.*

     Petitioner appealed.  The Delaware Supreme Court reversed Petitioner's

convictions, and remanded the case back to the Superior Court for a determination

concerning Petitioner's amenability to the jurisdiction of the Family Court.  *See*

*Franklin*, 855 A.2d at 279.

> In December 2004, [Petitioner] agreed to plead guilty to three counts of Rape in the Third Degree.  On March 1, 2005, the Superior Court sentenced [Petitioner], effective August 28, 2001, to a total of thirty years at Level V suspended after fifteen years for Level III probation.

*Franklin v. State*, 166 A.3d 103 (Table), 2017 WL 270547, at *1 (Del.

June 22, 2017).

> As part of his sentence, the Superior Court ordered [Petitioner] to complete a sex offender treatment program and forbade him from having contact with minors. Between 2015 and 2017, [Petitioner] was found in

---

[2]Under 10 Del. C. § 1011(b), a child charged with rape in the second degree shall be proceeded against as an adult unless the Court finds, upon application of the defendant, that the "interests of justice would be best served by ... transfer" to the jurisdiction of the Family Court.

> violation of the terms of his probation on four occasions.
> His violations included, among other things, contact with
> minors.
>
> On October 29, 2018, the Superior Court found
> [Petitioner] in violation of the terms of his probation for a
> fifth time.  The Superior Court immediately sentenced
> [Petitioner] to five years of Level V incarceration
> suspended after the successful completion of the
> Transitions Sex Offender Program ("Transitions") on one
> of the charges and imposed a suspended sentence on each
> of the other two charges.

*Franklin v. State*, 253 A.3d 92 (Table), 2021 WL 1961650, at *1 (Del. May 14,

2021).  Petitioner did not appeal.

On October 2, 2019, Petitioner filed a *pro se* motion to correct his October

2018 violation of probation ("VOP") sentence under Delaware Superior Court

Criminal Rule 35(a) ("Rule 35(a) motion"), which the Superior Court denied on

October 28, 2019.  (D.I. 10-1 at Entry Nos. 122, 129)  The Delaware Supreme

Court affirmed that judgment on February 20, 2020.  *See Franklin v. State*, 225

A.3d 1267 (Table), 2020 WL 864880 (Del.  Feb. 20, 2020).  Petitioner also filed in

the Delaware Supreme Court a petition for a writ of mandamus, which was

dismissed on January 15, 2020.  *See In re Franklin*, 224 A.3d 1006 (Table),

2020 WL 256172, at *2 (Del. Jan. 15, 2020).

On April 22, 2020, Petitioner filed in the Superior Court a motion to correct

sentence and a motion for credit for time served, which were denied on May 21,

3

2020.  (D.I. 10-1 at Entry Nos. 136, 137, 140, 141)  Petitioner did not appeal.

Petitioner timely filed the instant Petition on June 13, 2020.  (D.I. 3)  Since then, he has filed several *pro se* motions in the Delaware state courts concerning his 2018 VOP.  For instance, in December 2020, Petitioner filed a Rule 35(b) motion to modify his sentence.  The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision on appeal.  *See Franklin*, 2021 WL 1961650, at *1.  In July 2021, Petitioner filed a petition for writ of habeas corpus, which the Superior Court denied.  (D.I. 10-1 at Entry Nos. 159, 160)  Petitioner did not appeal.  Also in July 2021, Petitioner filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied in September 2021.  (D.I. 10-31; D.I. 10-32)  Petitioner did not appeal.  Petitioner filed a second Rule 61 motion in December 2021, which the Superior Court denied.  (D.I. 10-1 at Entry Nos. 167, 168, 169)  Petitioner did not appeal.  Petitioner filed another petition for a writ of habeas corpus in the Superior Court in January 2022, which the Superior Court denied.  (D.I. 10-1 at Entry Nos. 171, 172)  Petitioner did not appeal.

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") "to reduce delays in the execution of state and federal criminal

sentences . . . and to further the principles of comity, finality, and federalism."

*Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal

court may consider a habeas petition filed by a state prisoner only "on the ground

that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a).  Additionally, AEDPA imposes procedural

requirements and standards for analyzing the merits of a habeas petition in order to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693

(2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

unless the petitioner has exhausted all means of available relief under state law.

*See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999);

*Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –

5

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If a petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted.

*See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[]
the technical requirements for exhaustion" because state remedies are no longer
available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims,
however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v.
Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a
habeas claim to the state's highest court, but that court "clearly and expressly"
refuses to review the merits of the claim due to an independent and adequate state
procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*,
501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims
unless the petitioner demonstrates either cause for the procedural default and actual
prejudice resulting therefrom, or that a fundamental miscarriage of justice will
result if the court does not review the claims. *See McCandless v. Vaughn*, 172
F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause
for a procedural default, a petitioner must show that "some objective factor
external to the defense impeded counsel's efforts to comply with the State's
procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate
actual prejudice, a petitioner must show that the errors during his trial created more
than a possibility of prejudice; he must show that the errors worked to his actual
and substantial disadvantage, infecting his entire trial with error of constitutional

7

dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted

---

[3]*Murray*, 477 U.S. at 496.

if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard

in § 2254(e)(1) applies to factual issues, whereas the unreasonable application

standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner's timely-filed Petition asserts the following four Claims, all which

appear to be related to his October 2018 VOP hearing: (1) Petitioner's counsel

during the VOP hearing ("VOP counsel") provided ineffective assistance by not

objecting to the State's claims (D.I. 3 at 5); (2) the VOP judge sentenced Petitioner

with a closed mind (D.I. 3 at 7); (3) the VOP judge abused his discretion in

sentencing Petitioner outside the guidelines established by the Delaware

Sentencing Accountability Commission ("SENTAC") and by not questioning VOP

counsel when she stated there was a conflict of interest (D.I. 3 at 8); and (4)

Petitioner's constitutional rights were violated when the judge presiding over his

2018 VOP proceeding failed to *sua sponte* intervene when VOP counsel

ineffectively represented him (D.I. 3 at 10).

### A. Claim One:  Ineffective Assistance of Counsel

Petitioner contends that VOP counsel provided ineffective assistance during

his 2018 VOP hearing by failing "to object to any of the State's claims when she

couldn't coerce [Petitioner] into doing things her way." (D.I. 3 at 5)  According to

Petitioner, "he had to defend [him]self against the State as [if] he was *pro se*," and

defense counsel "only spoke to let the Court [know] that [he] didn't agree with her

10

and then wash[ed] her hands of [him] and left [him] to defend [him]self while on mental health drugs." (*Id.*)

The record reveals that Petitioner did not exhaust state remedies for the ineffective assistance of counsel argument ("IAC") asserted in Claim One. Although Petitioner presented the instant IAC argument in his 2018 Rule 35(a) motion for correction of an illegal sentence and in his Rule 35(a) appeal, the Delaware Supreme Court declined to address the IAC argument because it was "not cognizable within the limited scope of a motion under Rule 35(a)."[4] *Franklin*, 2020 WL 864880, at *1. In other words, Petitioner did not exhaust state remedies by including Claim One in his Rule 35(a) appeal because that presentation did not permit the Delaware Supreme Court to consider the argument on the merits.

In turn, although Petitioner included the instant IAC argument in his first Rule 61 motion that he filed in 2021 – which is the proper procedural vehicle for alleging ineffective assistance of counsel claims under Delaware law[5] – Petitioner did not appeal the denial of the Rule 61 motion. Consequently, he still has not presented the IAC argument to the Delaware Supreme Court in a manner permitting that court to consider the merits of the argument.

---

[4]In Delaware, ineffective assistance of counsel claims are properly asserted via a motion for post-conviction relief filed pursuant to Rule 61 motion. *See*
[5]*See Buchanan v. Johnson*, 723 F. Supp. 2d 722, 725 (D. Del. 2010).

At this juncture, if Petitioner tried to present Claim One in a new Rule 61 motion in order to appeal any decision therefrom, the motion would be barred as untimely under Rule 61(i)(1) and barred as successive under Rule 61(i)(2). *See Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive motions unless certain pleading requirements are satisfied). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant argument. Similarly, the exceptions to Rule 61(i)(1)'s time-bar and 61(i)(2)'s successive bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege a credible claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant argument. Given these circumstances, the Court must treat Claim One as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause-and-prejudice or a miscarriage of justice.

To the extent Petitioner's contention that he has been filing various pleadings in the state courts "for years with merit," but "the courts keep denying [him] without even checking [his] evidence [or] proof" should be viewed as an

attempt to establish cause, the attempt is unavailing.  Petitioner's reasons do not

constitute cause for his default because they do not demonstrate that an external

impediment prevented him from exhausting Claim One by filing a timely Rule 61

motion in the first place and appealing any adverse decision to the Delaware

Supreme Court.

Given Petitioner's failure to establish cause, the Court will not address the

issue of prejudice.  In addition, the miscarriage of justice exception to the

procedural default doctrine does not apply to excuse Petitioner's default, because

he has not provided any new reliable evidence of his actual innocence.

Accordingly, the Court will deny Claim One as procedurally barred from

habeas review.

**B. Claim Two:  Judge Sentenced Petitioner With a Closed Mind**

In Claim Two, Petitioner contends that the Superior Court judge who

presided over his October 2018 VOP hearing sentenced him with a closed mind.

More specifically, Petitioner asserts:

> When I pled guilty I asked the Judge to be understanding
> and give me a year in jail and a year in work release so I
> can pay all my fines owed to Delaware and Florida.  The
> Judge turned to a court bailiff and asked [if I can] go to
> work release.  [The bailiff] said no and the Judge turned
> and gave me 5 years instead of the 2 years [] the State [and
> I] agreed upon when I was incarcerated in Florida.  I admit
> to my guilt and accepted my 2 years at Level V supervision
> but the Judge ignored me and went with [the] court bailiff.

13

(D.I. 3 at 7)

Petitioner presented variations of his argument regarding the VOP judge's closed mind and failure to accept his probation officer's alleged two-year sentence recommendation in both his Rule 35(a) motion and in his Rule 35(a) appeal.[6] (*See* D.I. 10-5 at 1-14 (Rule 35(a) appeal), 44-45 (Rule 35(a) motion)).  In his Rule 35(a) appeal, after explaining that the "narrow function of Rule 35 is to permit correction of an illegal sentence, not to reexamine errors occurring at the trial or other proceedings before the imposition of sentence," the Delaware Supreme Court explicitly held that Petitioner's following arguments did not demonstrate that the Superior Court imposed an illegal sentence: (1) the sentence exceeded SENTAC guidelines; (2) VOP counsel provided ineffective assistance; and (3) he and VOP counsel had a conflict of interest. *Franklin*, 2020 WL 864880, at *1.  The Delaware Supreme Court also found that Petitioner's appeal was meritless. *See id.*

---

[6]Petitioner filed a Rule 35(a) motion alleging that his VOP sentence was illegal. (D.I. 10-1 at Entry Nos. 123, 125; D.I. 10-5 at 44-45)  After the Superior Court denied the Rule 35(a) motion, Petitioner appealed to the Delaware Supreme Court, arguing that his sentence exceeded the SENTAC guidelines and that the judge who sentenced him had "a preconceived bias and/or closed mind." (D.I. 10-5 at 7) More specifically, Petitioner argued that, during his 2018 VOP hearing, he and his probation officer agreed that Petitioner should serve two years at Level V supervision, but the "judge took it upon himself [to give] Petitioner five years at supervision Level V." (D.I. 10-5 at 13)

14

The Delaware Supreme Court did not explicitly mention Petitioner's "closed mind" argument when it affirmed the Superior Court's denial of Petitioner's Rule 35(a) motion.  Nevertheless, the Court concurs with the State's assertion that it must "presume[] that the court addressed the claim on the merits absent an indication otherwise" and review the argument § 2254(d)'s deferential standard. (D.I. 9 at 17-18); *see Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Williams*, 568 U.S. 289, 293 (2013) (holding that, when a state court rules against a defendant and issues an opinion that addresses some issues without expressly addressing a defendant's federal claim, a federal habeas court must presume, subject to rebuttal, that the claim was adjudicated on the merits).  Given these circumstances, Petitioner will be entitled to relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

Liberally construing Petitioner's allegations, the Court views Claim Two as alleging judicial bias.  It is well-settled that the Due Process Clause requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of a particular case. *See Bracy v. Gramley,* 520 U.S. 899, 904-05 (1997).  Significantly, there is a presumption that judges as public officials properly discharge their official duties, and a habeas petitioner must rebut this

presumption by showing actual bias. *Id.* at 909. A petitioner demonstrates actual

bias by showing that he was treated "unfairly" by the trial judge, and "there must

be an extremely high level of interference by the trial judge which creates a

pervasive climate of partiality and unfairness." *Marshall v. Hendricks,* 103

F. Supp. 2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 207 F.3d 36

(3d Cir. 2002). However, the Supreme Court has recognized that there are some

instances where a judge's implied bias creates such a high probability of actual bias

that it violates the Constitution. *See Withrow v. Larkin,* 421 U.S. 35, 46 (1975).

"Among these cases are those in which the adjudicator has a pecuniary interest in

the outcome and in which he has been the target of personal abuse or criticism

from the party before him." *Id.* at 47. In addition, implied judicial bias may be

found if the judge had significant prosecutorial and adjudicatory functions in the

same case. *See In re Murchison,* 349 U.S. 133, 134-36 (1955). Finally, the

Supreme Court has indicated that the proper "generalized" inquiry into implied

judicial bias is "whether sitting on the case... would offer a possible temptation to

the average ... judge to ... lead him not to hold the balance nice, clear, and true."

*Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 883 (2009).

Whether Petitioner's "closed mind" argument is construed as alleging actual

bias or implied bias on the part of the judge presiding over Petitioner's 2018 VOP,

16

the Court concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, *Bracy* and its progeny. With respect to actual bias, neither Petitioner's argument as presented in this proceeding and nothing in the record concerning the 2018 VOP sentencing indicates judicial interference, partiality, or unfairness. As for implied bias, there is no evidence in the record that the judge presiding over the Petitioner's 2018 VOP: (1) had a pecuniary interest in the outcome of Petitioner's case; (2) was the target of abuse by the parties; (3) engaged in significant prosecutorial and adjudicatory functions in his case; or (4) was tempted to stray from holding the "balance nice, clear, and true."

In sum, Petitioner admitted the factual basis for the 2018 VOP, his sentence did not exceed the statutory maximum, and nothing in the record suggests any judicial bias that could form the basis of a constitutional claim. Thus, the Court concludes that Petitioner has failed to demonstrate that the judge presiding over his 2018 VOP sentencing was actually or implicitly biased against him.

Accordingly, the Court willy deny Claim Two because Petitioner has failed to demonstrate that the Delaware Supreme Court's implicit rejection of his closed mind argument warrants relief under § 2254(d).

17

### C. Claim Three:  Sentencing Judge Abused Discretion

In Claim Three, Petitioner contends that the VOP judge abused his

discretion at the October 2018 VOP hearing by sentencing him to serve a

sentence outside the SENTAC guidelines.  Petitioner also asserts that the judge

failed to question Petitioner's "counsel when she told [the Superior] Court that

[she and Petitioner] had a conflict of interest."  (D.I. 3 at 8)

Claims based on errors of state law are not cognizable on federal habeas

review, and federal courts cannot re-examine state court determinations of state

law issues.  *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are

the ultimate expositors of state law."); *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) ("[T] is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.").  Petitioner's SENTAC argument alleges

that the sentencing court committed an error of state law when determining

Petitioner's VOP sentence.  Therefore, the Court will dismiss the SENTAC

argument in Claim Three for failing to assert an issue cognizable on federal

habeas review.

The Court now turns to Petitioner's conflict-of-interest argument.  When he

appealed the denial of his Rule 35(a) motion, Petitioner argued that he and defense

counsel disagreed over "how he should have to do his 2 year sentence."  (D.I. 10-5

at 11)  Petitioner stated that, during the 2018 VOP hearing, counsel informed the

Superior Court that Petitioner "feels he shouldn't have to do 2 years at Level V

supervision, so she was letting him speak for himself." (D.I. 10-5 at 11)  In

affirming the Superior Court's denial of Petitioner's Rule 35(a) motion, the

Delaware Supreme Court stated that, to the extent Petitioner's allegation

concerning the judge's failure to inquire into a conflict-of-interest "is distinct from

his ineffective assistance of counsel claim, that argument does not demonstrate that

the Superior Court imposed an illegal sentence." *Franklin*, 2020 WL 864880, at

*1.

The State explicitly waives any reliance on a potential procedural bar by

contending that the Delaware Supreme Court's ruling constitutes an implicit

adjudication of Petitioner's conflict-of-interest argument.[7]  Consequently, the

---

[7]If the State had not explicitly waived relying on a procedural bar, the Court would actually treat the Delaware Supreme Court's decision as holding that Petitioner's instant conflict of interest argument was not reviewable under Rule 35(a) because it involved an error occurring prior to the imposition of the sentence and, therefore, outside the scope of Rule 35(a).  For instance, the Delaware Supreme Court asserted that Petitioner's conflict of interest argument "does not demonstrate that the Superior Court imposed an illegal sentence" *after* stating that

> the narrow function of Rule 35 is to permit correction of an illegal sentence, not to reexamine errors occurring at the trial or other proceedings before the imposition of sentence.  A sentence is illegal if it exceeds statutory limits, violates double jeopardy, is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be

19

Court will review the argument under § 2254(d)'s deferential standard, which means that Petitioner will only be entitled to relief for his argument that the Superior Court abused its discretion by failing to address a conflict of interest if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Sixth Amendment's right to effective assistance of counsel also includes the right to counsel's undivided loyalty. *See Wood v. Georgia,* 450 U.S. 261, 271 (1981); *Strickland v. Washington,* 466 U.S. 668, 692 (1984). If counsel "actively represented conflicting interests and an actual conflict of interest adversely affected the lawyer's performance," then *Strickland'*s prejudice requirement will be presumed. *See Cuyler v. Sullivan,* 446 U.S. 335, 348–50 (1980); *Hess v. Mazurkiewicz,* 135 F.3d 905, 910 (3d Cir.1998). An actual conflict of interest arises when "trial counsel's interests and the defendants' interests diverge[ ] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 135 (3d Cir. 1984). As explained by the

---

imposed by statute, is uncertain as to its substance, or is a sentence that the judgment of conviction did not authorize. *Franklin,* 2020 WL 864880, at *1. In other words, by presenting the conflict of interest argument in a Rule 35(a) appeal, Petitioner did not fairly present the argument in a manner permitting the Delaware Supreme Court to address it on the merits, which would mean that the argument is procedurally barred absent a showing of cause and prejudice.

Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "[T]he conflict must cause some lapse in representation contrary to the defendant's interests ... [which] can be demonstrated not only by what the attorney does, but by what he refrains from doing." *Mickens v. Taylor*, 535 U.S. 162, 173 (2002). When addressing conflict of interest claims, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists." *Id.* at 167–68.

The Supreme Court has held that a "court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States*, 486 U.S. 153, 160 91988). This requirement, however, should not "be confused with when the trial court is aware of a vague, unspecified possibility of conflict." *Mickens*, 535 U.S. at 169.

As presented in his Petition, Petitioner's description of the alleged conflict of interest that existed between him and VOP counsel is less than clear.

Consequently, the Court turns to Petitioner's various presentations of the instant

argument in his state court filings in an attempt to better understand his contention

that a conflict of interest existed.

From what the Court can discern, Petitioner presented the following

information to the Delaware state courts: (1) Petitioner violated his

probation by travelling to Florida and getting arrested on July 3, 2018 on drug

charges (D.I. 10-11 7); (2) Petitioner was extradited to Delaware on October 8,

2018 after he served his drug sentence in Jacksonville, Florida (*Id.*); (3) after

returning to Delaware, Petitioner and his probation officer agreed that he should

serve two years at Level V for his 2018 VOP (D.I. 10-5 at 13, 44; D.I. 10-11 at 7);

(4) the probation officer mistakenly asked the Superior Court to sentence Petitioner

to sex offender treatment because Petitioner's record did not indicate that

Petitioner had already completed in 2006-2008 and 2015-2016 (D.I. 10-11 at 12);

(5) VOP counsel "had an argument with [Petitioner] prior to [the VOP] hearing

about how he should have to do his 2 year sentence" (D.I. 10-5 at 11); (6) although

Petitioner informed VOP counsel that he had already completed sex offender

treatment, VOP counsel never notified the sentencing judge (D.I. 10-11 at 7); and

(7) VOP counsel informed the Superior Court that Petitioner "felt that he shouldn't

have to do two years at Level 5" (D.I. 10-23 at 3); and (8) Petitioner "admitted to

22

what counsel told [the VOP] judge" and explained that he owes fines in "Delaware and Florida and should be allowed to go to work release so he can begin paying on both of his financial debts" (D.I. 10-23 at 3). In sum, the alleged conflict of interest appears to stem from the fact that VOP counsel allegedly disagreed with Petitioner's belief that he should be sentenced to two years at Level V with credit for time already served. (D.I. 10-11 at 13)

To reiterate, in October 2018, after finding Petitioner in violation of his probation, the VOP judge sentenced Petitioner to five years of imprisonment at Level V for one of the underlying charges, suspended after successful completion of the Transitions Sex Offender Program for two years of Level III probation. (D.I. 10-7 at 2) For the other two underlying charges, the VOP judge sentenced Petitioner to five years of imprisonment at Level V, suspended for two years of Level III probation. (*Id.*) Additionally, Petitioner's completion of the Transitions Program in 2016 was related to an earlier sentence separated "in time and space" from his 2018 VOP sentence. (D.I. 10-12 at 4)

Given this record, the Court cannot conclude that VOP counsel's statement to the Superior Court that she was letting Petitioner "speak for himself" regarding the sentence he wished triggered the VOP judge's duty to inquire into an actual or potential conflict of interest. Rather than ignoring or preventing the pursuit of

"some plausible alternative defense strategy," VOP counsel's decision to have Petitioner present his reason to the judge presiding over the VOP hearing as to why he believed he should be sentenced to two years at Level V rather than to five years at Level V actually provided Petitioner with an opportunity to pursue an alternative strategy – whether plausible or not. And, perhaps more significantly, Petitioner agreed with VOP counsel's statement (D.I. 10-23 at 2), and he does not allege that he informed the Superior Court that he was unhappy with VOP counsel's representation or that he himself asserted the existence of a conflict of interest. In sum, the fact that Petitioner and VOP counsel may have disagreed at the 2018 VOP hearing does not demonstrate a conflict of interest.

Given Petitioner's failure to demonstrate that VOP counsel's statement to the Superior Court triggered that court's duty to inquire into a potential conflict of interest, the Court concludes that the Delaware Supreme Court's denial of Petitioner's conflict of interest argument does not warrant relief under § 2254(d).

## D. Claim Four: Superior Court Failed to *Sua Sponte* Inquire Into VOP Counsel's Performance

In his final Claim, Petitioner asserts that the Superior Court "failed to take notice of [his VOP] counsel's [failure] to perform her duty and help [him] defend [him]self and/or find the best possible remedy to help [Petitioner] and not constantly incarcerate [him] after being locked away from the age of 14 years till

now, 19 years later." (D.I. 3 at 10)  On appeal from the denial of his Rule 35(a)

motion, Petitioner argued that the Superior Court "abused its discretion by not

tak[ing] notice of the 'ineffectiveness' of [his] counsel who[se] performance f[ell]

below the standard of proficient representation that the constitution demands."

(D.I. 10-5 at 9)  The Delaware Supreme Court did not explicitly consider the

instant argument when it concluded that Petitioner's appeal was meritless and his

sentence was  not illegal. *See Franklin*, 2020 WL 864880, at *1.  The State asserts

that the Delaware Supreme Court implicitly adjudicated Claim Four on the merits,

thereby requiring the Court to review the Claim under § 2254(d).  Given the State's

explicit waiver of any possible procedural bar,[8] the Court will review Claim Four

under § 2254(d)'s deferential standard to determine if the Delaware Supreme

Court's decision was either contrary to, or an unreasonable application of, clearly

established federal law.

---

[8]The Delaware Supreme Court denied Petitioner's IAC argument in Claim One
because it did not assert a cognizable issue under Rule 35(a).  The Court views the
instant argument as part of the IAC argument in Claim One.  Consequently, even
though the Delaware Supreme Court did not explicitly refer to Petitioner's instant
language regarding the Superior Court's failure to take notice of VOP counsel's
alleged ineffectiveness when it issued its decision, the Court would also view the
instant argument as being dismissed for failing to assert a cognizable issue under
Rule 35(a).  In other words, if not for the State's explicit waiver, the Court would
view the instant argument as procedurally barred, requiring an inquiry into cause
and prejudice before considering its merits.

As an initial matter, the Court notes that the Delaware Supreme Court's denial of Claim Four was neither contrary to, nor an unreasonable application of, clearly established federal law, because a defendant does not have a constitutional right to have a trial court assist with his defense. *See, e.g., Gov't Virgin Islands v. Lewis,* 620 F.3d 359, 370 n. 10 (3d Cir. 2010) ("[T]rial courts generally are under no duty to raise affirmative defenses on behalf of a criminal defendant."). To the extent Claim Four includes Petitioner's contention about the Superior Court's failure to inquire into his VOP counsel's purported conflict of interest, his argument fails for the reasons already discussed with respect to Claim Three. *See supra* at Section III. C.

Finally, to the extent the Court should liberally construe Claim Four as alleging that the Superior Court's failure to *sua sponte* assist with his defense strategy somehow violated his right to due process, the argument is unavailing. Violation of probation hearings are subject to following minimum requirements of due process: (1) written notice to the probationer of the claimed violations of probation; (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) a neutral hearing body; (5) an opportunity for cross-examination of adverse witnesses unless precluded by good cause; (6) a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation; and (7) the assistance of

26

counsel in some cases. *See Black v. Romano,* 471 U.S. 606, 612 (1985). Petitioner has not demonstrated that his VOP hearing did not meet these minimum requirements of due process. Thus, for all these reasons, the Court will deny Claim Four as meritless.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability. The Court will enter an order consistent with this Memorandum Opinion.